IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:06CR031 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Christopher A. Boyko |
| v. | ) | |
| | ) | |
| JACK A. BUFFIN, | ) | PLEA AGREEMENT |
| | ) | |
| Defendant. | ) | |

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, and in consideration of the mutual promises set forth below, the United States Attorney's Office for the Northern District of Ohio (hereinafter "USAO"), by and through its undersigned attorney, and the defendant, JACK A. BUFFIN (hereinafter "Defendant"), agree as follows:

PADec2005.wpd

Defendant's Initials: JB

Plea Agreement of JACK A. BUFFIN - page 2 of 17

## MAXIMUM PENALTIES AND OTHER CONSEQUENCES OF PLEADING GUILTY

1. **Waiver of Constitutional Trial Rights.** Defendant understands that Defendant has the right to plead not guilty and go to trial. At trial, Defendant would be presumed innocent, have the right to trial by jury or the Court, with the consent of the United States, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses and subpoena witnesses to testify for the defense, and the right against compelled self-incrimination. Defendant understands that Defendant has the right to an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent Defendant. Defendant understands that, if Defendant pleads guilty and that plea is accepted by the Court, there will not be a further trial of any kind, so that by pleading guilty Defendant waives the right to a trial.

2. **Maximum Sentence.** The statutory maximum sentence for the count to which Defendant agrees to plead guilty is as follows:

| Count | Statute | Maximum sentence per count |
|---|---|---|
| 1 | 18 U.S.C. §§ 1832(a)(1) and (2) (Theft of Trade Secrets) | Imprisonment: 10 years<br>Fine: $250,000<br>Supervised release: 3 years |

*Defendant's Initials:* JB

Plea Agreement of JACK A. BUFFIN - page 3 of 17

3. **Alternative Maximum Fine.** The maximum fine that the Court may impose is the greater of the statutory maximum stated above or twice the gross pecuniary loss or gain from the offense of conviction.

4. **Sentencing Guidelines.** Defendant understands that federal sentencing law requires the Court to impose a sentence which is reasonable and that the Court must consider the advisory U.S. Sentencing Guidelines in determining a reasonable sentence.

5. **Special Assessment.** Defendant will be required to pay a mandatory special assessment of $100, due immediately upon sentencing.

6. **Costs.** The Court may order Defendant to pay the costs of prosecution and sentence, including but not limited to imprisonment, community confinement, home detention, probation, and supervised release.

7. **Restitution.** The Court may order Defendant to pay restitution as a condition of the sentence, probation, and/or supervised release.

8. **Violation of Probation/Supervised Release.** If Defendant violates any term or condition of probation or supervised release, such violation could result in a period of incarceration or other additional penalty as imposed by the Court. In some circumstances, the combined term of imprisonment under the initial sentence and additional period of incarceration could exceed the maximum statutory term.

## ELEMENTS OF THE OFFENSE

9. The elements of the offense to which Defendant will plead guilty are:

| 18 U.S.C. § 1832(a)(1) and (2): Theft of Trade Secrets | |
|---|---|
| One: | The Defendant stole, or without the owner's authorization obtained, downloaded, sent, mailed, communicated, or conveyed information; |
| Two: | The Defendant knew or believed that the information was a trade secret; |
| Three: | The information was, in fact, a trade secret; |
| Four: | The Defendant intended to convert the trade secret to the economic benefit of somebody other than the owner; |
| Five: | The Defendant knew or intended that the owner of the trade secret would be injured; and |
| Six: | The trade secret was related to, or was used in, a product that was produced or placed in interstate or foreign commerce. |

## AGREEMENTS AND STIPULATIONS OF THE PARTIES

## GUILTY PLEA / OTHER CHARGES

10. **Agreement to Plead Guilty.** Defendant agrees to plead guilty to the Information in this case.

## FACTUAL BASIS

11. The parties stipulate to the following facts, which satisfy all of the elements of the offense to which Defendant agrees to plead guilty:

    a. Gear Pump Distributors (USA), Inc. ("Gear Pump") is an Ohio corporation. Gear Pump was a subsidiary of Dosco GPM Holdings ("Dosco"), a South African corporation located in Guatang, South Africa. Dosco was in the business of manufacturing and selling hydraulic pumps and related components.

    b. Guyan International, Inc. (dba Permco) ("Permco") is a West Virginia corporation. Permco maintained its principal place of business in Streetsboro, Ohio. Permco was in the business of manufacturing and selling hydraulic gear pumps and motors, flow dividers, intensifiers, and accessories. Permco's products were sold and shipped, and intended to be sold and shipped, in interstate and foreign commerce. At all relevant times, Permco took steps to safeguard confidential and proprietary business information. These measures included, but were not limited to, instructions to employees regarding the dissemination of such information and restricting access to certain information to a limited number of high-level employees through password protection and internal policy memoranda.

    c. The defendant, JACK A. BUFFIN is a resident of Stow, Ohio. BUFFIN was Manager of Special Projects for Permco.

Plea Agreement of JACK A. BUFFIN - page 6 of 17

     d.     From in or about December 2003, through in or about October 2004, in the Northern District of Ohio, Eastern Division, and elsewhere, JACK A. BUFFIN, the defendant, with the intent to convert trade secrets belonging to Permco to the economic benefit of Dosco, which trade secrets were related to and included in products that are produced for and placed in interstate and foreign commerce, did download, transmit, deliver, send, mail, and communicate such information knowing it to have been obtained and converted without authorization, intending and knowing that these actions would injure Permco, to wit: defendant transmitted and caused to be transmitted by means of electronic mail communication (e-mail) proprietary and confidential Permco business information, without authorization of Permco, in order for Dosco to gain a competitive advantage over Permco. This information, included, but was not limited to: internal price lists for both the U.S. and European markets, internal parts cost lists, copies of internal Permco e-mails, an internal sales report, internal business opportunities of Permco, and Permco supplier information.

     e.     Beginning in approximately 2001, Dosco began exploring the opportunity of increasing its presence in the United States market. In or about December 2003, Dosco approached BUFFIN about the possibility of setting up their operations in the United States.

Plea Agreement of JACK A. BUFFIN - page 7 of 17

   f.  It was part of the scheme that representatives of Dosco/Gear Pump would have meetings with BUFFIN to discuss Gear Pump's plans for the United States market. While still a full-time employee at Permco, BUFFIN took two trips to South Africa to discuss his role in Dosco's business development in the United States. During one of the trips, BUFFIN was introduced to other executives and shareholders of Dosco as Gear Pump's representative in the United States. In one instance, representatives Dosco met BUFFIN at a trade show in Dallas, Texas. In order to avoid detection of the existing relationship between BUFFIN and Dosco, the representatives of Gear Pump stayed, and held the meeting at, a hotel other than where Permco representatives were staying. On or about April 14, 2004, BUFFIN sent an e-mail to a representative at Dosco which stated: "We will be staying at the Hyatt Regency at Reunion Arena in Dallas. There will be 6 people there from Permco . . . The only problem with you staying at the same hotel would be it being obvious if we spent time together in the bar there. I could leave my hotel and go to yours easier and probably not be seen by the other Permco people . . . I'm anxious to finalize some things while in Dallas . . ." On or about April 1, 2004, another representative of Dosco sent an e-mail to BUFFIN regarding the trade show in Dallas in which he stated: "It will be great to see you in Dallas but I promise not to come onto your stand and greet you like a long lost buddy."

Plea Agreement of JACK A. BUFFIN - page 8 of 17

g.  During this time period and without authorization of Permco, BUFFIN would send confidential and proprietary Permco information while BUFFIN was still a full-time employee of Permco. An effect of this was to cause Permco identifiable economic harm in that BUFFIN's actions would allow Dosco an unfair competitive advantage over Permco as it entered the United States market with the knowledge of Permco costs, pricing, and customers while in direct competition with Permco. In order to avoid detection, BUFFIN would e-mail the information from his office e-mail address to his personal e-mail address and then forward the information from his personal e-mail account to Dosco in South Africa.

h.  During this same time period, representatives of Dosco would travel to the United States and BUFFIN would take them on surreptitious, unauthorized tours of the Permco plant in Streetsboro, Ohio. In order to avoid detection, these tours took place after business hours and on the weekends. BUFFIN, on one occasion, introduced a Dosco representative as a customer from Australia, rather than disclose the fact that direct competitors of Permco were visiting the facility. While there, the representatives of Dosco photographed the internal workings of the Permco plant.

i.  BUFFIN, while a full-time Permco employee, assisted in the creation of Dosco's United States operations in Ohio, Gear Pump, including: locating real estate, seeking tax incentives from local government officials, and setting up a corporation with

Plea Agreement of JACK A. BUFFIN - page 9 of 17

its principal place of business at his home address. Some of the electronic mail (e-mail) that transmitted the trade secret information include, but are not limited to, the following:

(1) On or about January 30, 2004, BUFFIN e-mailed Permco parts price sheets from the Northern District of Ohio to representatives of Dosco in South Africa. The e-mail stated: "Please find attached parts price sheets. They represent Permco LIST prices. Permco commonly gives –% off and occasionally gives –% off these. This represents ALL Permco parts, part numbers at this time. I hope you find this helpful. Regarding [a Permco customer]: I am getting as much information up for you as I can as soon as I can. For your information, they currently buy winch motors from Permco. They are a pretty good customer, and buy more winch motors from us than any body else."

(2) On or about February 26, 2004, BUFFIN e-mailed an internal price list for the European market from his office in the Northern District of Ohio to representatives at Dosco in South Africa. The e-mail stated: ". . . here is European pricing. Everybody pays the same prices. [A Permco customer] pays the prices in the last column. These are for parts only, I'm getting unit pricing for you ASAP. I hope this helps."

Plea Agreement of JACK A. BUFFIN - page 10 of 17

(3) On or about March 9, 2004, BUFFIN e-mailed an internal Permco memorandum regarding a price increase due to steel costs from the Northern District of Ohio to a representative of Dosco in South Africa.

(4) On or about April 15, 2004, BUFFIN e-mailed a spreadsheet containing confidential internal cost and price for Permco in the United States from the Northern District of Ohio to representatives of Dosco in South Africa. In a follow-up e-mail sent on or about April 16, 2004, BUFFIN stated: "I was reflecting on what I had sent you and thought you might indeed like some explanation. I sent you two spreadsheets. One of them (PPN-withsupp) is a list of all PARTS with Permco's suppliers listed along with LIST and COST. . . ."

(5) On or about May 27, 2004, BUFFIN e-mailed a spreadsheet containing confidential Permco supplier information from the Northern District of Ohio to representatives of Dosco in South Africa. The e-mail stated: "See attached file. Fasteners and plastic plug suppliers are noted in red. All suppliers are listed so there are a large number of entries, but I hope you can decipher what you might need. If you have questions please e-mail me and I will respond ASAP."

Plea Agreement of JACK A. BUFFIN - page 11 of 17

## WAIVER OF APPEAL AND POST-CONVICTION ATTACK

12. Defendant acknowledges having been advised by counsel of Defendant's rights, in limited circumstances, to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255. The Defendant expressly waives those rights, except as reserved below. Defendant reserves the right to appeal: (a) any punishment in excess of the statutory maximum; (b) any sentence to the extent it exceeds the maximum of the sentencing range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in this agreement, using the Criminal History Category found applicable by the Court. Nothing in this paragraph shall act as a bar to the Defendant perfecting any legal remedies Defendant may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct.

## COOPERATION

13. Defendant agrees to cooperate fully with the United States of America and any other state or local government in investigations and prosecutions, as and when requested by the USAO. Such cooperation shall include providing all information,

Plea Agreement of JACK A. BUFFIN - page 12 of 17

attending all interviews, testifying before all tribunals, providing all documents and records, and providing all other forms of cooperation requested by government agents and prosecutors. Such cooperation also includes the obligation to provide truthful and complete information and the obligation not to commit any additional crimes. Defendant understands that if Defendant provides any false or misleading information, documents, or testimony, refuses to testify or otherwise fails to cooperate, or commits any additional crimes, such conduct will constitute a breach of this agreement. In addition, Defendant may be subject to separate prosecution for such criminal conduct, and nothing in this agreement will preclude the use of Defendant's sworn or unsworn statements against Defendant in this or any other prosecution.

## SENTENCING STIPULATIONS AND AGREEMENTS

14. **Recommendation to Use the Sentencing Guideline Computation.** The parties agree to recommend that the Court impose a sentence within the range determined pursuant to the advisory Sentencing Guidelines in accordance with the computations and stipulations set forth below. The government will not request a sentence higher than the advisory Sentencing Guidelines range and the defendant will not request a sentence lower than the advisory Sentencing Guidelines range.

Plea Agreement of JACK A. BUFFIN - page 13 of 17

14. **Stipulated Guideline Computation.** The parties agree that the following calculation represents the correct computation of the applicable offense level in this case, prior to any adjustment for acceptance of responsibility. The parties agree that no other Sentencing Guideline adjustments apply.

|  |  | Guideline § |
|---|---|---|
| Base offense level | 6 | § 2B1.1(a) |
| **Subtotal before Acceptance of Responsibility** | 6 |  |

15. **Acceptance of Responsibility.** The USAO has no reason to believe at this time that Defendant has not clearly and affirmatively accepted personal responsibility for Defendant's criminal conduct. Defendant understands, however, that the Court will determine acceptance of responsibility based on Defendant's overall conduct as of the date of sentencing.

16. **Criminal History Category.** The parties have no agreement as to the Criminal History Category applicable in this case. Defendant understands that the Criminal History Category will be determined by the Court after the completion of a Pre-Sentence Investigation by the U.S. Probation Office.

## OTHER PROVISIONS

17. **Agreement Silent as to Matters Not Expressly Addressed.** This agreement is silent as to all aspects of the determination of sentence not expressly addressed herein, and

Defendant's Initials: JB

Plea Agreement of JACK A. BUFFIN - page 14 of 17

the parties are free to advise the Court of facts and to make recommendations to the Court with respect to all aspects of sentencing not agreed to herein.

18. **Sentencing Recommendations Not Binding on the Court.** Defendant understands that the recommendations of the parties will not be binding upon the Court, that the Court alone will decide the applicable sentencing range under the advisory Sentencing Guidelines, whether there is any basis to depart from that range or impose a sentence outside of the Guidelines, and what sentence to impose. Defendant further understands that once the Court has accepted Defendant's guilty plea, Defendant will not have the right to withdraw such plea if the Court does not accept any sentencing recommendations made on Defendant's behalf or if Defendant is otherwise dissatisfied with the sentence.

19. **Consequences of Breaching the Plea Agreement.** Defendant understands that if Defendant breaches any promise in this agreement or if Defendant's guilty plea or conviction in this case are at any time rejected, vacated, or set aside, the USAO will be released from all of its obligations under this agreement and may institute or maintain any charges and make any recommendations with respect to sentencing that would otherwise be prohibited under the terms of the agreement. Defendant understands, however, that a breach of the agreement by Defendant will not entitle Defendant to withdraw, vacate, or set aside Defendant's guilty plea or conviction.

Plea Agreement of JACK A. BUFFIN - page 15 of 17

20. **Agreement not Binding on other Jurisdictions and Agencies.** Defendant understands that this plea agreement is binding only on the United States Attorney's Office for the Northern District of Ohio (USAO). It does not bind any other United States Attorney, any other federal agency, or any state or local government.

21. **Defendant is Satisfied with Assistance of Counsel.** Defendant makes the following statements: I acknowledge receiving the assistance of counsel from attorney Larry Zukerman concerning this plea agreement. I have fully discussed with my attorney all of my Constitutional trial and appeal rights, the nature of the charges, the elements of the offenses the United States would have to prove at trial, the evidence the United States would present at such trial, the Sentencing Guidelines, and the potential consequences of pleading guilty in this case. I have had sufficient time and opportunity to discuss all aspects of the case in detail with my attorney and have told my attorney everything I know about the charges, any defense that I may have to those charges, and all personal and financial circumstances in possible mitigation of sentence. My attorney has done everything I have asked my attorney to do and I am satisfied with the legal services and advice provided to me by my attorney and believe that my attorney has given me competent and effective representation.

22. **Agreement Is Complete and Voluntarily Entered.** Defendant and Defendant's undersigned attorney state that this agreement constitutes the entire agreement

Plea Agreement of JACK A. BUFFIN - page 16 of 17

between Defendant and the USAO and that no other promises or inducements have been made, directly or indirectly, by any agent or representative of the United States government concerning any plea to be entered in this case. In particular, no promises or agreements have been made with respect to any actual or prospective civil or administrative proceedings or actions involving Defendant, except as expressly stated herein. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

PADec2005.wpd

Defendant's Initials: JB

Plea Agreement of JACK A. BUFFIN - page 17 of 17

## SIGNATURES

**Defendant:** I have read this entire plea agreement and have discussed it with my attorney. I have initialed each page of the agreement to signify that I have read, understood, and approved the provisions on that page. I am entering this agreement voluntarily and of my own free will. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this agreement.

_Jack A. Buffin_      12/12/05
Jack A. Buffin      Date

**Defense Counsel:** I have read this plea agreement and concur in Defendant pleading in accordance with terms of the agreement. I have explained this plea agreement to Defendant, and to the best of my knowledge and belief, Defendant understands the agreement.

_Larry Zukerman_      12/12/05
Larry Zukerman, Esq.      Date

**United States Attorney's Office:** I accept and agree to this plea agreement on behalf of the United States Attorney for the Northern District of Ohio.

_Justin Roberts_      1/19/06
Justin J. Roberts      Date
Assistant U. S. Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113-1852
(216) 622-3958; (216) 522-2403 (facsimile)
E-mail:Justin.Roberts@usdoj.gov

**APPROVED:**

_Christopher A. Boyko_      2/14/06
Christopher A. Boyko      Date
UNITED STATES DISTRICT JUDGE

PADec2005.wpd      Defendant's Initials: _JB_